UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | | |
|---|---|---|---|
| SHAWNETTE STEWART, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | CAUSE NO: | 3:16-cv-204 |
| | ) | | |
| SIGNATURE HEALTHCARE, LLC, | ) | | |
| d/b/a SIGNATURE HEALTHCARE- | ) | | |
| NEWBURGH, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. Nature of the Case

1.      Plaintiff, Shawnette Stewart ("Stewart"), brings this Complaint against Defendant,

Signature Healthcare, LLC d/b/a Signature Healthcare – Newburgh ("Defendant"), for its

discriminatory actions toward her based on her race, African-American, and retaliation in

violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

### II. Parties

2.      Stewart, who is a Citizen of the United States, has resided within the State of

Indiana at all relevant times hereto.

3.      Defendant is a corporation who is located within and conducted business within

the geographic boundaries of the Southern District of Indiana at all times relevant to this action.

### III. Jurisdiction and Venue

4.      Jurisdiction is conferred on this Court over the subject matter of this litigation

pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; 42 U.S.C. and § 2000e-5(f)(3).

5.      Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b).

6.      Stewart, at all times relevant, has been an "employee" as that term is defined by 42 U.S.C. §2000e(f).

7.      Stewart satisfied her obligation to exhaust her administrative remedies having timely filed her U.S. Equal Employment Opportunity Commission ("EEOC") Charge alleging race discrimination and retaliation. Stewart received her Notices of Suit Rights and timely files this action.

8.      All events pertinent to this lawsuit have occurred in the legal environs of the Southern District of Indiana, thus venue in this court is proper.

### IV.  Factual Allegations

9.      Stewart,  who is African-American, was hired by the Defendant on or about May 23, 2015, as a Cook. Stewart held the same position upon her discharge on or about May 10, 2016.

10.     At all times relevant, Stewart met or exceeded the Defendant's legitimate performance expectations.

11.      Stewart was supervised by the Defendant's Dietary Manager, Bonnie Balthaus ("Balthaus"), who is Caucasian. From the outset of her employment, Stewart was warned about how Balthaus would treat African-American employees unfairly and discriminatorily.

12.     During her tenure, Balthaus refereed to the African-American employees as "soul sisters" and "Tootie", which is a reference to an African-American television character.  On another occasion Stewart cut her finger and was bleeding.  Balthaus saw Stewart's blood and stated "I am not going to touch your blood, I don't want to change colors."

13.     Furthermore, Balthaus would give the Caucasian employees preferential work schedules and priority for time off over African-American employees.   Moreover, if there was a

disagreement between kitchen workers, Balthaus would always take the side of the Caucasian employees.

14.     In or about April 2016, Stewart went to Defendant's Human Resources Manager, Connie Wells ("Wells"), and complained about Balthaus' comments, unfair scheduling and unfair treatment of the African-American kitchen employees.  In or about April 2016, Stewart also called Defendant's Corporate headquarters and made the same complaints regarding Balthaus.

15.     To Stewart's knowledge no remedial or disciplinary action was taken against Balthaus; however, sometime shortly thereafter, Balthaus told Stewart that if she had a problem wither her, Stewart need to come to her, not Wells.

16.     In early March 2016, Stewart completed her paperwork and made her request to take off May 7 and May 8, 2016 to attend a concert in Dallas, Texas. Stewart was already scheduled off for May 6 and May 9, 2016.

17.      As the dates neared, Stewart discussed her upcoming time off with Balthaus. Balthaus stated that she had torn up Stewart's time off request and she need to complete a new one.

18.     Stewart put in for the days off once again and Balthaus told her she could not take those days off because another employee had requested the same time off earlier that week.

19.     Stewart spoke with the employee who had been given the days off and the employee stated she no longer needed those days off, so Stewart could have them.  However, Balthaus instructed the employee to take the time off anyway because she did not want to revise the schedule.

20.     Next, the concert Stewart planned to attend was cancelled, so she no longer needed the time off from work.

21.     On or about May 6, 2016, Stewart injured her back and sought medical treatment. The medical provider put Stewart off of work for May 7 and May 8, 2016, due to her injury.

22.     On May 6, 2016, Stewart made three (3) calls to the Defendant – including calls to Balthaus and Wells; however, no one for the Defendant answered. Due to no one answering, Stewart left a voicemail about her condition and that she would not be medically released to return to work until May 9, 2016.

23.     On May 10, 2016, Stewart returned to work and was told by Balthaus that she was terminated for being a no-call/no-show on May 7 and 8, 2016. Balthaus stated that Stewart could not leave a message to call off from work and that "Corporate" had instructed her to fire Stewart.

24.     It is not a violation of Defendant's policy to call off from work via voicemail. Moreover, several similarly-situated employees call off from work via voicemail and are not terminated.

25.     Finally, Stewart called Defendant's Corporate Headquarters and was told that no one there spoke with Balthaus or instructed her to terminate Stewart.

26.     Stewart was subject to a hostile work environment, subject to different terms and conditions of employment and terminated based on her race and/or was terminated in retaliation for engaging in a protected activity.

### V.  Causes of Action

### Count I.  Title VII - Race Discrimination

27.     Stewart hereby incorporates by reference paragraphs one (1) through twenty-six (26) of her Complaint.

4

28.     Stewart was subjected to different terms and conditions of employment and terminated based on her race.

29.     Defendant's actions are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq.

30.     Defendant's actions were willful, intentional, and done with reckless disregard for Stewart's civil rights.

31.     Stewart has suffered injury as a result of Defendant's unlawful actions.

## Count II.  Title VII - Race Discrimination/Hostile Work Environment Claim

32.     Stewart hereby incorporates by reference paragraphs one (1) through thirty-one (31) of her Complaint.

33.     Stewart was subjected to a hostile work environment that was severe and pervasive based on her race.

34.     Defendant's actions are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq.

35.     Defendant's actions were willful, intentional, and done with reckless disregard for Stewart's civil rights.

36.     Stewart has suffered injury as a result of Defendant's unlawful actions.

## Count III.  Title VII – Retaliation Claim

37.     Stewart hereby incorporates by reference paragraphs one (1) through thirty-six (36) of her Complaint.

38.     Stewart was terminated from her employment due to engaging in a protected activity.

39.    Defendant's actions are in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et. seq.

40.    Defendant's actions were willful, intentional, and done with reckless disregard for Stewart's civil rights.

41.    Stewart has suffered injury as a result of Defendant's unlawful actions.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Shawnette Stewart, by counsel, respectfully requests that this Court find for Plaintiff and:

1.    Permanently enjoin Defendant from engaging in any employment policy or practice that discriminates against any employee on the basis of his/her race;

2.     Reinstate the Plaintiff to her former position or award front pay in lieu thereof;

3.    Order that the Plaintiff be awarded any back pay she would have earned, including fringe benefits, with related monetary benefits and interest thereon, absent Defendant's unlawful acts;

4.    Award the Plaintiff compensatory damages, consequential damages, emotional distress damages, lost wages and benefits, and medical expenses in an amount sufficient to compensate Plaintiff for the damages caused by the Defendant's wrongful actions;

5.    Award the Plaintiff punitive damages;

6.    Award the Plaintiff her attorney fees, litigation expenses, and costs incurred as a result of this action;

7.    Award the Plaintiff pre- and post-judgment interest on all sums recoverable; and

8.    Grant all relief available under the statute(s) for which this action is brought and any other relief as may be just and proper.

__s/ Kyle F. Biesecker_____
Kyle F. Biesecker, Attorney No. 24095-49
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana  47708
Telephone:    (812) 424-1001
Facsimile:     (812) 424-1005
E-Mail:         kfb@bdlegal.com

Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

The Plaintiff, Shawnette Stewart, by counsel, respectfully requests a jury trial as to all

issues deemed so triable.

__s/ Kyle F. Biesecker_____
Kyle F. Biesecker, Attorney No. 24095-49
BIESECKER DUTKANYCH & MACER, LLC
411 Main Street
Evansville, Indiana  47708
Telephone:    (812) 424-1001
Facsimile:     (812) 424-1005
E-Mail:         kfb@bdlegal.com

Attorneys for Plaintiff

7